Moncure, J.
This is a supersedeas to a judgment of the Circuit court of Petersburg, rendered in an action of assumpsit brought by the plaintiff in error, David Condon, against the defendants in error, the South Side rail road company, on a contract between them, whereby the said Condon agreed to excavate, embank and construct sections Nos. 38 and 40 of the South Side rail road, according to certain specifications, and the said company agreed to pay for the work at certain rates, and in a certain manner, prescribed by the *304 contract. The main, if not the only, object of the action, was to recover eighty cents per cubic yard for thousand six hundred and sixty-two cubic yards 0f excavation, instead of the price allowed therefor in the final estimate of the engineer of the company, to wit, eighty cents per yard for two hundred and sixty cubic yards, thirty-five cents per yard for five thousand seven hundred and ninety-six cubic yards, and forty cents per yard for the remaining six thousand six hundred and six cubic yards thereof. The declaration contains three counts, all of which are special counts. There is little material variance between them. There was a general demurrer to the declaration, which was sustained by the court, and judgment thereupon rendered for the defendants: to which judgment the supersedeas in this case was awarded.
The contract is set out in totidem verbis in each count of the declaration. It embodies the specifications according to which the work was agreed to be done, but which it is unnecessary to detail. Under the head of “Items to be estimated and mode of estimating,” is the following among other statements:
“All materials necessarily excavated for the road way, ditches or common road, will be estimated and paid for by the cubic yard, under the following heads, viz: Common excavation, Loose rock, Solid rock, and Slate that requires blasting.
“ Common excavation will include sand, clay, gravel, soft rock, loam, and all other earthy matter, also de- ■ tached rock intermixed, which do not contain more than three cubic feet each.
“Loose rock will include all detached rocks containing more than three and less than twenty-seven cubic feet each.
“ Solid rock will include all rock in masses containing more than one cubic yard, which requires blasting.
“ Slate — all slate which requires blasting.”
*305 The contract then proceeds:
“ And the South Side rail road company covenant and agree to pay to the said party of the second part when the above contract shall have been faithfully complied with, at the following rates, to wit:
Section No. 38, cents per cubic yard for common excavation.
Section No. 38, 9| cents per cubic yard of embankment.
At the engineer’s estimate for loose rock.
Section No. 38, 80 cents per cubic yard for every yard solid rock.
At the engineer’s estimate for slate rock.
Section No. 38, $ 3 per cubic yard of every yard of dry stone drains.
And they will make their payments in the following manner, that is to say: On or about the 1st day of every month during the progress of this contract, the company aforesaid will pay 80 per cent, of the relative value of such work as may be done, to be judged of by their engineer, and at such places as their said engineer may appoint, until the whole of the work herein contracted for shall have been finished agreeably to contract, and shall have been accepted by their said engineer as so finished and completed, when the balance due shall be forthwith paid to the said party of the second part.”
Then follow sundry other provisions, of which the last is the following:
“ And whereas the above work must be inspected and received, it is hereby agreed that the engineer of the South Side rail road company, or some one appointed by him, shall be the inspector of the said work, shall determine when this contract has been complied with, according to its just and fair interpretation, and the amount of the same, and all disputes *306 and difficulties arising under the same, and his decision shall be obligatory and conclusive between the parties to this contract, without further recourse of appeal.”
After setting out the contract, it is, among other 'things, averred in the first count of the declaration, that section No. 40 had been transferred to another contractor, with the consent of the engineer of the defendants, and been completed and accepted; that in consideration of the agreement aforesaid, the plaintiff entered upon section No. 38, and excavated, embanked and constructed the same according to the agreement; and the same was on the 30th day of March 1852, accepted by the said engineer as so completed; that he did on said section a certain quantity of work stated in detail, one item of which is “ twelve thousand six hundred and sixty-two cubic yards of rock in masses containing more than one cubic yard which required blasting;” that the chief engineer of the defendants, C. O. Sandford, appointed one B. H. Gordon to inspect and receive the work; that said Gordon, after he was so appointed, declared that the said twelve thousand six hundred and sixty-two cubic yards of rock excavation were in masses of more than one cubic yard, and required blasting, and could not be classified as “ common excavation,” yet refused to classify the same (except two hundred and sixty cubic yards) as “ solid rock;” but adopting an arbitrary and unauthorized mode of classification, put down five thousand seven hundred and ninety-six cubic yards thereof at thirty-five cents, and six thousand six hundred and six yards at forty cents, instead of the whole at eighty cents per cubic yard; claiming that, under the contract aforesaid, the chief engineer or person appointed by Mm to inspect and receive the said work, had authority to classify the said rock as “ soft rock,” although it was in masses of more than one cubic yard and required blasting, and although it could not be classified *307 as common exavation; that the said Gordon, governed by this mistake and illegal view of his authority, proceeded to make the classification (which is set out in the said count) of the work done on said section 38 ; three of the items of which classification are,
“ 260 cubic yards solid rock, worth SO cents per yard ;
5,796 cubic yards soft rock, worth 35 cents per yard;
6,606 cubic yards soft rock, worth 1-0 cents per yard;”
making the whole amount to the sum of ten thousand four hundred and thirty-eight dollars and sixty-one cents ; and that the determination and classification of the said Gordon were adopted and adhered to by said Sandford, the chief engineer of the defendants; whereupon the plaintiff says that the said classification is contrary to the terms of the contract, and illegal and void, and that he is entitled to demand of the defendants eighty cents per cubic yard for the said twelve thousand six hundred and sixty-two cubic yards of excavation.
The second count, substantially, agrees with the first. The third differs in substance from the first and second only in the assertion of an additional demand for expense alleged to have been incurred by reason of the lowering of the grade of said section 38, and not estimated by the engineer. But this additional demand seems not to be relied upon, and no special notice need be taken of it.
If the classification, or final estimate, as it may be called, of the engineer of the defendants, or his appointee, be final and conclusive between the parties, the demurrer to the declaration was properly sustained, and the judgment must be affirmed. For that estimate is set out in each count of the declaration, and shows how the rock in question was classified, and at what price it was estimated by the engineer; and the plaintiff seeks in this action to establish a dif *308 ferent classification, and to recover a different and higher Price*
Then the questions to be considered are: 1st. ^yj^ker j>y the terms, or the true intent and meaning a§reemeQk the final estimate or decision by the engineer or his appointee of the matter in controversy, is made final and conclusive between the parties? And if so, 2ndly. Whether such agreement is lawful ? I will consider these questions in their order. And
First. Does the agreement make the final estimate conclusive ?
The agreement does not, as most agreements for the construction of rail roads do, expressly declare that when the work is completed there shall be a final estimate of the amount due to the contractor, which estimate shall be conclusive between the parties. But such is, I think, the effect and meaning of the agreement. It gives to the engineer of the defendants a general superintendence and direction of the work, and confers upon him very extensive powers in regard to it. He is, monthly, during the progress of the work, to judge of its relative value, and appoint the places at which eighty per cent, thereof is to be paid to the contractor. He is to make such a deduction from the stipulated price as he may d'eem fair and right, if any portion of the work be constructed in an inferior manner. He is to estimate and adjust the increase or decrease of expenses occasioned by any change which may be made in the line of the rail road, or the width or the level of the road way, or the plan of the works contracted for. He may object to the transfer of the contract to any person to whom the contractor may propose to transfer it j may require the discharge of any overseer, workman or laborer employed by the contractor: and if, in his opinion, a sufficient force shall not be placed and retained upon the *309 work to insure its completion by the time stipulated, he or his assistant, after giving notice as required by the contract, may, at his option, either place a sufficient force upon the work at the expense of the contractor, or declare the whole or any portion of it abandoned. And finally, it is agreed that he, “ or some one appointed by him, shall be the inspector of the said work, shall determine when this contract has been complied with, according to its just and fair interpretation, and the amount of the same, and all disputes and difficulties arising under the same; and his decision shall be obligatory and conclusive between the parties without further recourse of appeal.” Under these provisions of the contract, I do not perceive how there can be any question as to the intention of the parties, that at the completion of the work a final estimate should be made by the engineer or inspector, for the purpose of ascertaining the amount due on the contract, that all disputes and difficulties arising under it should be determined by him, and that his decision should be final and conclusive between the parties. Indeed, by express stipulations of the contract, portions of the work were to be paid for, not at agreed prices, but “ at the engineer’s estimate.” He was to make reasonable deductions from agreed prices of work done in an inferior manner ; and was to estimate and adjust the increase or decrease of expenses occasioned by changes of the plan of the work, &c. Without a final estimate by the engineer, therefore, it was impossible to ascertain the balance due upon the contract. It was an entire contract, and on its complete execution there could be but one demand upon it. Not one demand for that part of the compensation which was fixed by the contract, and another for that part to be fixed by the estimate of the engineer. The making of a final estimate, therefore, was a condition precedent to the right of action.
*310 It now only remains, under the head of the subject we are now considering, to enquire, Whether the estimate made by the engineer in this case was such a one as the contract authorized ? Did the engineer exceed 3 his authority in making the estimate ? If he did, then by analogy to the case of an award, and according to a principle of law which governs this case alike with that (if in fact there be any difference, in this respect, between the two cases), the estimate is void. The parties intended that all questions, whether of law or of fact, which might arise under the contract, should be determined by the engineer; and that intention is, I think, plainly expressed therein. It is expressly declared that he “ shall determine when the contract has been complied with, according to its just and fair interpretation, and the amount of the same, and all disputes and difficulties arising under the same;” and that “ his decision shall be obligatory arid conclusive between the parties without further recourse of appeal.” He cannot set aside or disregard the contract of the parties. That contract must furnish the law of the case. He cannot alter the prices thereby ascertained, even though he may consider them too high or too low. If it should appear that he did so, his act would, undoubtedly, be void. He must decide “ according to the just and fair interpretation” of the contract. But of that interpretation he and he alone is the judge, as he is of any other question arising under the contract. And he is not a judge whose decision may be reviewed like the judgment of an inferior tribunal; but he is a judge of the parties’ own choosing, and in the last resort; as to whom they have expressly agreed that “ his decision shall be obligatory and conclusive, without further recourse of appeal.” If he do not keep within the bounds of his authority, his act will, of course, be void. But if he keep within those bounds, his act will be valid, however erroneous *311 in law or in fact it may be, and however plainly the error may appear. The court cannot set aside his act merely because it differs in opinion with him, on a question of law or of fact; for all questions arising under the contract, whether of law or of fact, were ^ referred by the parties to Ms decision, and not to that of the court. His act-may be set aside on the ground of fraud, and perhaps of palpable mistake. But it is unnecessary to state that ground of relief more fully, or to enquire whether it is available at all or not in a court of law, as it does not ex .st in this case. The only question here is, Did the engineer exceed his authority? It is contended by the ccj unsel for the plaintiff in error that he did, because tin. contract requires all excavation done under the samj to be estimated under four certain heads, and at prices therein respectively prescribed; whereas he estimated twelve thousand four hundred and two cubic yards of said excavation under a head and at prices not prescribed by the contract. It is contended that, according to the contract, this quantity of rock should have been estimated as “ solid rock,” at eighty cents per cubic yard; or, if not, at least as “ common excavation,” at nine and one-fourth cents per cubic yard ; whereas it was estimated as “ soft rock,” at thirty-five and forty cents per cubic yard; there being no such head of classification and no such prices as these last prescribed by the contract. The stipulated price for common excavation is nine arid one-fourth cents per cubic yard ; and “ soft rock” is expressly enumerated, among other substances, under the head of “ common excavation.” So that if the engineer has committed any error, so far as appears on the face of the estimate, it would seem to consist in allowing thirty-five and forty cents, instead of nine and one-fourth cents, per cubic yard for twelve thousand four hundred and two cubic yards of excavation. It could hardly be contended that this *312 would be an error of which the contractor could comP^11, But, it is averred in the declaration that the engineer declared that the “ soft rock” in question was (1 masses 0f more than one cubic yard and required blasting,” and could not be classified as “ common excavation and it is therefore contended that the said rock should have been estimated as “ solid rock;” the contract providing that “ solid rock will include all rock in masses containing more than one cubic yard which requires blasting.” If this alleged declaration of the engineer were part of his estimate; or, being matter dehors the estimate, could be relied on as a ground to invalidate it, I think it is insufficent for that purpose. At most, it only shows that in the opinion of the engineer, the “ soft rock” in question was a substance not falling under either of the four heads of classification enumerated in the contract; and therefore he allowed such price for its excavation as he deemed reasonable, under that provision of the contract which authorized him to determine “ the amount of the same, and all disputes and difficulties arising under it.” If this court had the power, could it undertake to say that the engineer’s opinion was erroneous? that “soft rock” can be “solid rock,” even though it be “in masses containing more than one cubic yard which requires blasting?” Or that “soft rock in masses containing more than one cubic yard which requires blasting,” can be “ common excavation.” If it were necessary that the “soft rock” in question should be classified under one or the other of the two heads of “ solid rock” or “ common excavation,” would there not be at least as much reason in classifying it under the latter as under the former head? But was it not for the engineer to decide under which of the heads enumerated in the contract the said rock should be classified; and, if of opinion that it could be classified under none of them, what *313 price should be allowed for its excavation? Was not this one of the “ disputes and difficulties arising under the contract,” which he was expressly authorized to determine, and which it was necessary for him to determine, in order to ascertain the amount due upon 1 the contract? And can this court, even though it may differ in opinion with him, revise and reverse his decision ? If it did differ in opinion with him, it could only say, as did Parke, B. in Faviell v. Railway Company, 2 Welsb. Hurl, and Gord. 346, “ It is simply the case of an erroneous decision ; and if parties choose to refer a matter to a judge of their own selection, they are bound by his decision both in fact and law. The fallacy lies in assuming that the arbitrator has exceeded his jurisdiction.” See Russ. on Arbitration, 63 Law Library, marg. p. 113-116, 295-300, 306-313, 455, 516, 632, and the cases cited in the notes. My conclusion on this branch of the subject is, that the engineer did not exceed his authority in making the estimate ; and that it is final and conclusive as to the matter in controversy, if the agreement under which it was made be lawful; which brings me to the question next to be considered.
Secondly. Is the agreement lawful ?
The only ground on which it can be said to be unlawful is, that in referring all disputes and difficulties arising under the contract to the engineer or inspector, it tends to oust the courts of law of their jurisdiction; and is therefore against the policy of the law and void, according to the principle of the cases of Kill v. Hollister, 1 Wils. R. 129; Thompson v. Charnock, 8 T. R. 139, and others of the same class. That principle is, that wherever a cause of action exists, a right of action in a court of law is incident thereto, and inseparable therefrom, even by the agreement of the parties. So that, if parties enter into an agreement referring a present or future cause of action to the decision of *314 an arbitrator, even though they expressly stipulate that no action shall be brought in the mean time, the will be no bar to such action. A covenant never £0 SU6) jg an implied release, or has the effect of a release, to avoid circuity of action. A covenant not to sue for a limited period, is no release express or implied, nor any bar to the action; though the breach of it is an independent cause of action; as also is the breach of an agreement to refer, by revoking the reference or bringing an action in disregard thereof. The principle in question, it is said, though considered to be now settled, is doubtful in its origin and not to be extended in its operation. It is carefully to be distinguished from another principle with which it is sometimes confounded, and from which it is separated by a line not always easily discernible. That other principle is, that parties by their contract may lawfully make the decision of arbitrators or of any third person a condition precedent to a right of action upon the contract. In that case such decision is a part of the cause of action. Until the decision is made and the cause of action thus becomes complete, the courts have no jurisdiction of the case, and therefore cannot be said to be ousted of their jurisdiction by the contract. They can only be said to be so ousted when an independent cause of action exists, or will exist, which is itself referred to the decision of arbitrator's. This principle is commonly applied to building contracts and the like, in which it is stipulated that compensation for the work is not to be paid until the work has been accepted and the amount of compensation ascertained by an architect, engineer, or other referee. Without referring to the many cases which illustrate this principle, I will notice only that of Scott v. Avery, 36 Eng. L. & E. R. 1, decided by the house of lords in 1856. That was an action brought upon three policies of insurance. By the contract of *315 insurance it was provided that the sum to be paid for any loss should first be ascertained by the committee; but in case of difference between the insured and committee relative to the settling of any loss, or to a claim for average, or any other matter relating to the insurance, then arbitrators were to be appointed to decide upon the claims and matters in difference. There was a further proviso, that no member who refused to accept the amount of any loss as settled by the committee, should be entitled to maintain any action at law or suit in equity on his policy until the' matters in dispute should have been referred to and decided by arbitrators, and then only for such sum as they should award; and the obtaining such decision was to be a condition precedent to the right to maintain such action or suit. It was held by the house of lords (affirming the judgment of the court of exchequer chamber), that the proviso was not a contract ousting the jurisdiction of the courts, but was legal and binding on the parties, and that it created a condition precedent to the right of action on the contract. The distinction between the two principles before referred to, is well illustrated in the opinion of Coleridge, J. in that case (who also delivered the opinion of the court of exchequer chamber in the same case). “ If two parties enter into a contract for the breach of which in any particular an action lies, they cannot make it a binding term that in such event no action shall be maintainable, but that the only remedy shall be by reference to arbitration. Whether this rests on a satisfactory principle or not, may well be questioned, but it has been so long settled that it cannot be disturbed.” “ But nothing prevents parties from ascertaining and constituting as they please the cause of action which is to become the subject matter of decision by the courts. Covenanting parties may agree that in case of an alleged breach the damages to be *316 recovered shall be a sum fixed, or a sum to be ascertained by A B, or by arbitrators to be chosen in such or such a manner; and until this be done, or the nonfeasance be satisfactorily accounted for, that no action shall be maintainable for the breach.” “ In settling the amount to be recovered by a builder or a rail way contractor, the architect, or engineer, or whoever may be the preliminary referee agreed on for the purpose, must examine and decide that which may really be the very point in dispute between the parties, namely, the quantity or the goodness of the work, or the quality of materials used; yet no one objects that on this account the stipulation for submission to this previous enquiry is void as ousting the jurisdiction of the courts. I am certainly not disposed to extend the operation of a rule which appears to me to have been founded on very narrow grounds, directly contrary to the spirit of later times, which leaves parties at full liberty to refer their disputes at pleasure to public or private tribunals; and I think the judgment of the court of exchequer chamber stands on a safe distinction between an agreement which would close entirely the access to the courts of law, and that which only imposes, as a condition precedent to the appeal to them, that the parties shall have first settled, by an agreed on mode, the precise amount to be recovered there.” Id. 15 and 16. That case seems to be much stronger than this in favor of the validity of such agreements, and if the agreement in that case was valid, so a fortiori is the agreement in this. Indeed I think the agreement in this case is valid according to all the cases I have seen. I mean of course, in the construction I haye put upon it, that the estimate of the engineer or inspector ascertaining the amount due upon the contract, is, by the terms and true intent and meaning of the contract, a condition precedent to a yight of action thereon. The agreement, in effect, is *317 mot to pay a specific sum, but the amount which the engineer may determine to be due upon the contract: and according to all the cases, such an agreement valid and binding.
But even if the agreement in this case came within the operation of the principle which prevents parties from ousting courts of law of their jurisdiction, it would not on that account be unlawful, but would only leave the parties at liberty to resort to the courts of law as if no other mode of decision had been agreed upon by them. They would still be at liberty, at their election, to pursue the remedy agreed upon; and having pursued it to a decision, they would be bound and concluded thereby. Now in this case the remedy agreed upon was pursued; the engineer made Ms final estimate; and the only complaint is that he made it erroneously; that he classified as “ soft rock” at thirty-five and forty cents per cubic yard, what he ought to have classified as “ solid rock” at eighty cents per yard? and that he persisted in doing so though requested by the plaintiff to make a different and proper classification. Therefore, if the engineer did not exceed his authority in making the estimate, it is final and conclusive; and that he did not, has already, I think, been shown.
I am of opinion that the judgment be affirmed.
Allen, P. and Lee and Samuels, Js. concurred in the opinion of Moncure, J.
Daniel, J. dissented.
Judgment affirmed.